So we'll call our one case. It's 25-1997, United States v. Daryl Devonish. Counsel, how are you? Good. May it please the court, Kristen Lance on behalf of the appellate Daryl Devonish. I'd like to reserve three minutes for rebuttal, if I may. The section 2B1.1B9 enhancement applies only if a defendant misrepresents that he is acting on behalf of a charitable organization. Let me stop you there. So when, is it Devonish? Is that how to pronounce the name?  Devonish. So if Mr. Devonish represents, in the pre-sentence report there's several paragraphs where he signs off on some forms. Right. Requesting these funds and verifying they're going to be spent accordingly. Is that a misrepresentation? It's a misrepresentation as to how the funds will be allocated. It's a failing misrepresentation, but it's not a misrepresentation about his charitable role. And what is the exact charity here? Because I thought he acknowledges that this entity is a conduit for the scheme that he had learned about and wished to effectuate. I mean, is it really in contention here that this is not a legitimate charity that is driven by a charitable purpose with a charitable mission, as opposed to just a fraud? The district court itself found that this was a legitimate charity and that he founded it with pure intentions, but that over time, as he became exposed to money for the first time in his life, this is all in the sentencing transcript, that he became a bit infatuated with the money and began submitting. What are the meets and bounds of that legal standard, just so I understand it? If I establish a charity tomorrow with the full intent of a philanthropic purpose, and I immediately disregard that upon the money coming in and just divert it all to personal purposes, it's still a charity under that test. And if that continues for the next 10 years, it's been a charity the whole time. It's a tough standard to hold, right? I would say in that situation, it would be tough to claim that there was a real charitable purpose there. Ninety-nine percent and one percent, right? I mean, because I'm going to get you down to 80-20 and say, well, then how are we not here in the same place? Well, I mean, this was a legitimate charity. He was serving meals to these children. And he made misrepresentations as to what was going to happen to that money, right? He made misrepresentations as to how many meals he was serving or as to the nutritional value of those meals. He certainly inflated meal counts. But that all goes to fraud. I mean, that's just ordinary fraud. He lied about... According to the pre-sentence report in paragraph, I will ensure that all monthly claims for reimbursement are true and correct, and the records are available to support these claims. This is a flat-out misrepresentation, correct? Sure, absolutely. But it's not a misrepresentation as to his authority to act for a charity or as to there being a charity at all. What is a charitable organization under the law that is relevant to the application of this guideline? How do we know what is or isn't a charitable organization? I suppose that could be looked at in various ways here. I mean, he was a non-profit. He received the IRS tax-exempt status for being a charity. So I keep going back to this language, a misrepresentation. You agree there were misrepresentations here? I agree. That the defendant was acting on behalf of the charitable. This is a charitable organization? Correct. So how was the guideline not applicable if there are misrepresentations? Well, but the misrepresentation is that he was acting on behalf. It has to go to agency, right? But when he requests the money, he's acting on behalf. I mean, he's saying this is how the money is going to be spent. He's acting on behalf of the organization, isn't he? Sure. But then, I mean, I think then you're going down the road of saying that any time a charity or a non-profit commits fraud, then that guideline enhancement applies. It could. I mean, it doesn't always have to, right? That's a facts and circumstances question. But to adopt your reading, then it would mean that only someone, I think, who either says, I'm here on behalf of a non-existent entity, right? There is no charitable organization. Right, a sham. Or I'm here on behalf of a bona fide actual charitable organization, but I'm not really. Right. Those are the only two instances, right? I would say that, you know. That's going to remove the possibility that the 99% fraudulent organization. I think there are probably four scenarios in which this enhancement could apply. One, it would be that you're misrepresenting your authority to act on behalf of a charity. You don't actually have any authority. You know, you're claiming to be with the Salvation Army, but you're not. Or you've invented a charity that doesn't even exist. Or you're using this charitable pretense to solicit funds to exploit charitable goodwill. I think that's sort of the heart of this when we look at the background commentary. Or you're using this charity as a mechanism to reach the victims, you know. That would go to Rafus, for example, where he used this image of Good Samaritans to access elderly within senior centers. Your example of using a legit charity in the background to solicit money. But I thought you said earlier that if you're legitimately working for the charity, you're insulated, right? So what if you aren't legitimately working for the charity, but using your position to solicit funds for yourself? I would say under that, in that scenario, that this particular enhancement doesn't apply. It does not apply.  And that's what you think the text of this is written, to exclude people who actually work for a charity and who are- Well, who have the authority to act. I mean, I think if you work for a particular charity and you have no authority within that charity to go fundraise or to solicit donations, but you misrepresent, you put yourself out there, you portray yourself as having that authority. You say, I work for Salvation Army. I can collect money on their behalf. But really, you don't have that. Then I would say you're misrepresenting that you have the authority to act on behalf of that charitable organization. But if you have that authority to fundraise for the Salvation Army, and you do that Monday, Tuesday, Wednesday, Thursday, Friday, you fundraise for yourself under the auspices of the Salvation Army. Thursday, Friday is insulated. Yeah, I think that's where there are other enhancements that could apply, but I don't think this particular enhancement applies. Do you agree that he was, again, that misrepresentation, the misrepresentation is that I'm putting the money in my pocket. Right. I mean, that's a misrepresentation.  That's fraud, but that's not a misrepresentation that you're acting on behalf of the charity. Well, if I act on behalf of the charity, say I'm going to use these funds to feed kids and I pocket the money, I'm acting on behalf of the charity by making this representation of the funding source, and then I pocket the money, that doesn't fit in your rubric? I think it could if you are using that charitable image to entice people to contribute funds. And that's what he did to the government here, right? He says, look, I'm going to feed kids and others with your money. Well, he had already, you know, he got approval to be a sponsor in the program. Right. Where his misrepresentations fell was within billing. You know, he inflated the numbers. So at that point, he wasn't using the charitable purpose. He wasn't exploiting anybody's goodwill to get the government to fund the program. It was simply like an auditing issue. He's exploiting their goodwill, as it were, by soliciting the funds. Right. And then he takes like $800,000 in misappropriates. He did. Yes. But again, that misrepresentation did not go to his role with regard to the charity. And I think that this guideline, when read, when just looking at the text of the guideline, it's pretty clear that it's going to, you know, a misrepresentation as to your role. What's this misrepresentation that he was, the defendant was acting on behalf of? Right. But there is no, in that, in that text, you know, I know that some of these courts, like Markham, they inserted the word holy. And then that later, the Sentencing Commission adopted that interpretation, that judicial gloss, and added in part. But, but the text itself doesn't say that, you know, they were acting wholly on behalf of the charity, or, you know, it doesn't say in part, it just says whether or not you are, you know, it's on behalf of a misrepresentation that you're acting on behalf of the charity, whether that's 100% of the time, or 80% of the time, 20% of the time, you know, it doesn't give any, any limitation there. Isn't the wholly or partially piece covered by if the offense involved, and so it could have involved it in whole or in part, a misrepresentation, as long as there was a misrepresentation involved? I suppose, but I think when you're looking at the context of the guideline itself, within that particular guideline, they do use, sorry, they, they, the, the Sentencing Commission shows that, that they can, if they want to capture all frauds by a charitable organization, for instance, they know how to say so. If you look at, at the rest of the paragraph under B, it says a misrepresentation or other fraudulent action during the course of bankruptcy proceedings, or in C, a misrepresentation in connection with, so they know how to use broader language, but they didn't do that in A. Thank you. We'll see you on rebuttal. Good afternoon. May it please the court, Patrick Bannon for the United States. Um, I'd like to just start, uh, where I think the, the majority of the questions were, which is to, uh, Mr. Devenish's conduct here in, um, misrepresenting that he was acting on behalf of this charity. Uh, it's exactly the type of conduct that this, uh, that this guideline provision was meant to target. What's the misrepresentation? Um, well, I, I think as, as, uh, the panel pointed to several times that he was submitting these false, uh, he was submitting these, um, uh, applications on behalf of his, uh, charity for funding. Um, they were clearly misrepresenting what the money was going to, where he was spending about 80% of the money on personal expenses, as opposed to where the money was intended to go, which was to feeding programs for low-income, primarily children. Um, so the misrepresentation was where the money was being spent and how he was spending it, where he was purporting to spend it on the feeding programs and part of this program, but he was actually spending it on himself and, and where that money went is detailed, you know, length in the, in the presentence report on personal expenses. Um, so, so that, that is exactly the type of conduct that this, um, this guideline was meant to, uh, provide enhanced penalties for. Um, I think the court, um, in Reifus, was it a charitable organization? Well, so his, uh, his, his organization, uh, I believe it was called rebuilding better communities was organized as a non-profit under the laws of Pennsylvania. So he had gone through the steps of setting up a 501c3 non-profit, um, under the, you know, under Pennsylvania state law. Uh, that makes it a charitable organization within the guideline. Exactly. Um, that's, I'm asking if that's your position. It is, he set up an actual charity and, and several, so RBC is an actual charity in the government's position because he set it up as a non-profit. Well, he, if I come up with the world's most, if I like, I'm going to call it the fraudulent enterprise, and then I go and I incorporate it as a non-profit mindful that I imagine the rigor of that examination of that paperwork may be lacking. And then I'm good, right? I'm outside of the guideline. It doesn't matter what I do. Well, I think a couple of points about the structure of the organization. And I think, uh, actually the background commentary is helpful here that, you know, this guideline is, is specifically designed to target people who take advantage of charitable motives. So it's, you know, soliciting donations on behalf of, you know, what is essentially a charitable purpose. And I think the case law and, you know, analyzes, you know, all different sorts of schemes. And some of them involve, you know, purely fake charities where someone purports to act on something that doesn't exist. And some of them involve charities, which are set up through the, you know, the legal process that a state provides for setting up a non-profit. And here you have the latter, but I don't think the guideline makes a distinction between whether, you know, some sort of technical rules are followed for setting up a non-profit and whether someone's just flat out lying about the organization that they purport to represent. Because here you have a case where, you know, whether or not Mr. Devenish had gone through the steps of setting up this non-profit under Pennsylvania state law, he was purporting to act on behalf of a charitable organization that was supposed to provide meals for low-income children. And if you look at it, it's outlined. Your colleague will tell you, well, right, that's exactly what he did. There may have been fraud after that association, but all he did was represent the agency on behalf of what you agree is a bona fide charity. And so yes, he committed fraud, but he didn't. So I'm misrepresenting that he was acting on behalf of a charitable organization because he was, since he had agency to do so. Well, I think a couple of points with that. I think first of all, that reads totally out of this enhancement, the fact that if someone goes through the nominal steps of setting up a real organization, that they're sort of insulated from patent punishment, which I think the court in Reefus really pointed to that this is, that's the purpose of this enhancement is that, you know, creating fake charities or operating with a false purpose on behalf of a charity is sort of at the heart of this. I find that persuasive, but I thought your position was, oh, the formalities of going through that process is what creates a charitable organization. And after that, it's an agency question as your colleague has explained. And so which one is it? Sorry, I'm not sure I understand the question or the distinction. I want to make sure I'm answering the correct question because I think, you know, specifically with the facts of this case, as I think is outlined in the programs, they were open to registered nonprofits. So he couldn't have committed this fraud or the structure of the fraud was designed, you know, in terms of creating the charity first, and then, you know, misrepresenting how the funds of the charity were being used, where they're being used on himself. So I'm not sure if I'm answering your question, but I want it's important that, you know, he wasn't just misrepresenting that he was acting on behalf of a charity, he was misrepresenting the role that he was playing and how the funds of that charity were being used in repeated submissions as to how the funding was being used during the operation over the course of two years. And I think your colleague on the other aisle says, as to the former, that is potentially within the enhancement as to the latter, it's not. And I understood you to be saying this is a second tier case that he is misrepresenting what he's doing with the money that the legitimate charity has taken in, and that is fraud. But your colleague argues, that's not fraud within this enhancement, because the enhancement is about the agency question at the formation. And I understood you earlier to be saying, no, it's a legitimate charity, because it was organized pursuant to the nonprofit, among other things, it was organized pursuant to the nonprofit laws, Commonwealth of Pennsylvania, and so it's a charity. But then that means you're not in that first bucket, you're only in the second bucket, but the second bucket doesn't fit comfortably with the language that says misrepresent that the defendant was acting on behalf of a charity. Well, I would say I was acting on behalf of a charity, I did bad things with the money once I did. But I wasn't misrepresenting that I was acting on behalf of the charity, because you're agreeing that it was a charity. Well, I think that that is true. Well, it was a charity. We're not we're not disputing that in terms of how it was organized under the laws of Pennsylvania, as opposed to the reefers case, which is it's the purported was not registered as a nonprofit 501 c three, as it was here. But I think more to your point, the court addressed this issue in in Bennett, where there was an actual charity, and that wasn't being disputed. And the court said, the guideline didn't apply, simply because there was either a bogus charity, or a misrepresentation about someone's authority to act on behalf of an existing charity. It applied in that case, even though the defendant in that case, had a charitable organization that he was acting on behalf of, but was using the funds for personal expenses. And that's exactly what what happened here. So I think that that distinction was addressed pretty squarely in the Bennett case, and several of the cases that we cited in term, including the air money case from the Second Circuit, and the kidney case as well from the Second Circuit, where just because there's an existing charity doesn't remove conduct from scope of this enhancement. And I think it's well in line with the purpose of the enhancement. Because whether someone goes through some sort of formalities on one end, or is just making things up on the other end, what they're doing is, is, you know, taking advantage of the charitable motives of, you know, soliciting donations, regardless of who the victims are. And, you know, that conduct is still the same. And that's the conduct that the you're saying that I referring to the government as the victim here? When you when you use the purpose of the statute, the government was the victim, right? Yeah, so the the USDA was ultimately funding these programs. So the purpose in the background commentary is, is that this is to apply to defendants who take advantage of victims trust, or their generosity and charitable motives, right? So are we? That's what we're worried about here, the government's trust, its generosity or its charitable motives? Well, I think the the guideline itself, you know, both in the plain text, even in that background commentary, and, you know, to the extent that the court would look at the interpretive commentary really focuses on the nature of the conduct and not necessarily the identity of specific victims. So I don't think even in the background commentary, it's saying only these type of victims are the ones it's really focused on the on the type of conduct. So there's been several cases, including from this court where the government was, was the victim in the refus case, it was it was Medicare. In the Bennett case in the Second Circuit, it was it was federal Pell Grants from the Department of Education. So the government has been the victim in several of these cases. And it's not either in the plain text of the guideline, or even in the background commentary to suggest that, well, only if it's, you know, specific individual donations that this guideline applies, it's the fact that a person's is purporting to be acting on behalf of a charity and taking advantage of people's trust in charities and the good work that charities do generally. And if you look at the the full text of the guideline itself, I mean, charitable organization is what is the entity that's being disputed here. But there's several other entities which people, you know, put their trust in to identified in the in the text of political organizations and agencies and other ones. So it's really the conduct that takes advantage of that trust, as opposed to, you know, any sort of specific victims. So if if the victim happens to be a for profit corporation, or a nonprofit corporation, or an individual donor of the government, the the guideline itself, the text, the background commentary, the interpretive commentary doesn't distinguish between the identity of specific victims. So I think I understand, Mr. Devon is his point to be acting on behalf of can be an acting as a representative or can be an acting in the interest of. And is it your view that because that phrase can have those two meanings that this that the phrase is ambiguous? Well, I think, first of all, the district court was pretty clear that it was applying the plain text of the guidelines. So in addressing the district court's ruling here, we argue that the plain text, you know, the district court was correct in applying the plain text, we don't think that there's any inconsistency with referring to the commentary. So if this court were to find that the guideline itself is ambiguous, I think the commentary fully supports the district court's verdict as well. So I think that the two whether it's the plain text or the interpretive commentary, I think they both apply to Mr. Devon is just kind of argument. Well, the argument that we raised in our brief was to focus on the plain text. But I think both are fully in line with with one another. And I think the background commentary in also supports that view, too. So I think, you know, it's consistent throughout the guidelines. So, you know, in our in our brief, we address the plain text, that's what the district court did. We don't think there would be any error in finding, you know, ambiguity, if this court were to determine that, you know, the guideline was ambiguous. I think that the commentary even more fully supports what the conduct here on the application of the guideline. Thank you. There's no further questions. Thank you. Um, briefly, I do want to state that the district court, while it said that it was relying on the plain text, she also hinged her decision on this court's decision and Rafa, which within the first line of its analysis in that decision, the court went to the interpretive commentary. And so I think, you know, and in the government's briefing to the court and their sentencing memos, they to rely not only on briefness, but also the interpretive commentary. So I think in turn, the district court did so as well. You know, it came back to the holy were in part of discussion. Otherwise, Judge Mady, I think you accurately stated my position. So if there are any other questions we have to address, your position is novel though, right? And there's not an abundance of authority interpreting the guideline the way you're advocating. There's some old law on this, but nothing that is, I think Frazier in the 10th circuit comes pretty close to what we're saying. It's the unauthorized use of funds. They had the authority to act, but they from the 1990s, this enhancement is not unusual one. And yet it has not been the source of much attention to the argument you're raising. So it would put us in a fairly novel bit of interpretation if we accept that argument, right? I wouldn't say it's novel. I think most of the, there's not a lot of case law on this particular enhancement that we located. But I think most of the cases that are out there, they do rest within these categories of exploiting the public's goodwill. So actively soliciting donations with bad intentions or using sham charities or using it as the mechanism to access the victims. Here, none of those things applied. He was running a charity and he misrepresented his reimbursement claims, his meal counts. Is it fair to say that the authority that's out there takes a fairly broad reading of this particular guideline? A lot of the authority kind of followed in the footsteps of the four circuits decisions in Markham and then in Arimony. Then the second circuit followed that in Kinney and then the sentencing commission and those cases decided to align itself with that broader interpretation rather than with the more narrow interpretation of the 10th circuit and Frazier. So we would suggest that the court focus on the text itself, which would align more closely with the 10th circuit's decision. Thank you very much. Thanks. Thank you both counsel for their briefs and their argument. We'll take this matter under advisement and circle back to you in the not too distant future.